The Court charged the jury, that under these circumstances, the title of the Defendant's son, under whom he held, was bad: but that the plaintiff must recover by the strength of his own title, and that by reason of the lien created by the attachment, the Plaintiff had not a good title. The jury found a verdict for the Plaintiff; and a rule for a new trial being obtained, it was sent to this Court.
For the lessor of the Plaintiff, it was argued that it was provided by the act of the second session of 1777, ch. 2, sec. 25, "that original attachments shall be returned to Court and be deemed the leading process; and the same proceedings shall be had thereon as on judicial attachments." The 23d section, in regard to judicial attachments, provides that "the goods so attached, if not replevied or sold, shall remain (65) in the custody of the sheriff until final judgment, and then be disposed of in the same manner as goods taken inexecution on a writ of fieri facias; and if the judgment shall not besatisfied by the goods attached, the Plaintiff may have execution for theresidue."
When goods are taken on a fieri facias, and it be desired that they should be disposed of, the proper mode is to sue out a Venditioni exponas, commanding a sale of the goods so taken. If the goods so taken are not to the value of the whole debt, the Plaintiff may have a Venditioni exponas
for those seized, and a fieri facias for the residue, in the same writ. (Tidd, Practice, 934. Sargent on Attachments, Appendix.) Such is precisely the form to be observed on attachments.
But if the Plaintiff, instead of a Venditioni exponas, sue out a generalfieri facias, he waives the seisure under the first execution and destroys the lien on the property seized on, by it (Eckhols v. Graham 1 Call, 492), and so it was expressly decided in this Court in the case of Scott v. Hill. (Term 181.)
Whatever lien therefore was created by the attachment, it being precisely that with the lien on goods taken in execution on a fieri facias, such a lien was waived by the Plaintiff's suing out a general fieri facias
and purchasing under it.
In the second place, the sale to Amyett was antecedent to *Page 54 
the attachment, and it is not the design of the attachment laws, to subject to such a process any property but what truly and equitably, as well as nominally and legally, belongs to the debtor (3 Mass. 558, 564.)
Lastly, the verdict conforms to the justice of the case; and the Court will not disturb it to keep in possession a man who clearly has no right.
For the Defendant, it was argued, that although no judgment of condemnation appeared of record, yet in this case enough appeared to induce the Court to presume that such a (66) judgment had been rendered. But it may not be material to the main question of lien, whether there were such a judgment formally rendered: for the levying of the attachment created a lien, and this lien is not waived by suing out the fieri facias. This execution commands the Sheriff to levy the debt out of the Defendant's property, that is, such property as is subject to the debt; which is different in different executions. If it be an execution regularly continued from term to term, it authorizes a seizure of property conveyed by Defendant bona fide at any time since the teste of the first fierifacias, although prior to the teste of the execution under which it is seized: for as to that fi. fa. it is the Defendant's property. So also as to a fraudulent conveyance. In the present case, the property being subjected to the payment of this debt, the purchaser is permitted to shew that his title relates back beyond the teste of the fi. fa. or the rendition of the judgment. The recital of the judgment in the fi. fa. is sufficient to identify it; a more full recital could only do the same.
This is likened to the case of a fi. fa. where there has been a former levy, which, it is said, discharges that levy. A levy under a fi. fa. is a discharge of the debt, at least until the property is sold and its insufficiency ascertained, or the levy waived and the property actually restored to the Defendant. When the Plaintiff, therefore, sues out a fi. fa
after having caused a levy to be made, as that act could not be done without waiving the levy, and thereby discharging the lien, he is concluded from alleging that the levy continues, his act being inconsistent with it. Attaching property does not satisfy the debt; it is to secure its payment when recovered; and the property cannot be sold and applied to its discharge without a fi. fa. or some other process. But a Sheriff may sell without a Venditioni exponas: One seizure is to secure, the other to satisfy. The first requires the further aid of the Court to effectuate the object of seizure, which object being the raising of the money *Page 55 
for the Plaintiff, the process which issues to effectuate it can only suspend during its operation, the lien created by the first seizure, on a presumption that the debt will be (67) raised by this process. But the lien is restored when it appears that the debt was not so raised.
If there were no judgment of condemnation, it may possibly render the final judgment erroneous: but until reversed, it has all the effects of the most regular judgment. A reversal would only give a right to the money lost, not to the land sold to raise it — But a judgment of condemnation is nothing more than the Plaintiff's adopting the property of the Defendant for his person, and thereby excusing his appearance. The after judgment pre-supposes this to have been done.
In this case the attachment created a lien on the land; and had that been continued by the Defendant's proceeding thereon; obtaining a judgment of condemnation of the land and then final judgment, issuing exception, and having the land sold by virtue thereof, his title would be good. But this has not been done. The only effect of issuing the attachment and having it levied, was to give the Court jurisdiction, whereby judgment might be obtained. In this case the levy was made upon the land, but no judgment was subsequently entered condemning the land to satisfy the final judgment which might be rendered. When this final judgment was rendered the lands levied on were thrown into the general mass of landed property belonging to the Defendant, by taking out an execution against his property generally as is done in ordinary cases. The lien created by the attachment was lost, and the title to the land vested in the lessor of the Plaintiff; the deed to him being executed long before either the judgment was obtained or an execution issued. Let the rule for a new trial be discharged.
Cited: Skinner v. Moore, 19 N.C. 149; Harbin v. Carson, 20 N.C. 524;Smith v. Spencer, 25 N.C. 264; Powell v. Baugham, 31 N.C. 155; McMillanv. Parsons, 52 N.C. 165; Perry v. Mendenhall, 57 N.C. 160; May v.Getty, 140 N.C. 317. *Page 56 
(68)